IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**LIZZETTE M. BOURET ECHEVARRIA, et al.,**

    **Plaintiffs,**

        v.

**ROBINSON HELICOPTER COMPANY, et al.,**

    **Defendants.**

**CARIBBEAN AVIATION MAINTENANCE CORP., et al.,**

    **Third-party Plaintiffs,**

        v.

**D&O AVIATION, INC., et al.,**

    **Third-party Defendants.**

**Civil No. 09-2034 (GAG)**

**OPINION AND ORDER**

Consolidated Plaintiffs in this matter, Lizzette M. Bouret Echevarria, Nicole Vidal Bouret, Catherine Vidal Bouret, and Camille Vidal Bouret ("Plaintiffs") commenced this action seeking compensatory damages against the named defendants, Robinson Helicopter Company ("RHC"), Caribbean Aviation Maintenance Corporation ("CAM"), et al. (collectively "Defendants") under Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. Laws Ann. tit. 31, § 5141, for damages arising out of the death of Plaintiffs' decedent Diego Vidal Gonzalez. The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000. Presently before the court is CAM's motion for summary judgment (Docket No. 194). The issues addressed by CAM's motion were thoroughly briefed in Plaintiffs' opposition (Docket No. 204), as well as CAM's reply

**Civil No. 09-2034 (GAG)**                                      2

(Docket No. 211) and Plaintiffs' sur-reply (Docket No. 221). After reviewing the pleadings and pertinent law, the court **DENIES** CAM's motion for summary judgment (Docket No. 194).

## I.     Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**Civil No. 09-2034 (GAG)** 3

**II.    Relevant Factual & Procedural Background**

The instant matter arises out of the crash of a Robinson R-44 helicopter (the "Helicopter"), piloted by plaintiff/third-party defendant Jose Montano ("Montano") on November 12, 2008. The Helicopter was owned by third-party defendant D&O Aviation, Inc. ("D&O"). At the time of the crash, the two individuals aboard the Helicopter were Montano and passenger Diego Vidal Gonzalez ("Decedent"). The incident occurred at the end of a flight from Cyril E. King Airport in St. Thomas, U.S.V.I. to the Fernando Luis Ribas Dominicci Airport in San Juan, Puerto Rico. Decedent received extensive trauma to his head and other parts of his body when the Helicopter crashed. He ultimately died from these injuries. Montano was able to escape with minor injuries.

Prior to the tragic events of November 12, 2008, CAM, an authorized maintenance provider for Robinson Helicopters, was commissioned to perform maintenance on the Helicopter during its annual inspections. CAM hired IA Ruben Gonzalez ("Gonzalez") to conduct the July 17, 2008 annual inspection and identify any necessary maintenance. An IA is a certified mechanic with the authority to inspect and approve aircraft for return to service upon completion of an annual inspection. During the time that he conducted inspections for CAM, Gonzalez also worked for Copters, Inc.

The most recent annual inspection of the Helicopter took place on July 17, 2008, approximately four months before the crash. On that date Gonzalez inspected the Helicopter using the Robinson Annual Inspection Procedures and Checklist. According to the checklist, the IA was required to inspect, *inter alia*, the following items:

> Main Rotor Push-Pull Tubes: Inspect condition of viewable portions. Verify no cracks at ends. Inspect rod ends per Section 2.120. Verify no tears in sleeves (electric trim system only). Verify security and operating clearances.
> Vertical Push-Pull Tubes: Inspect for general condition and corrosion. For manual controls, inspect push-pull tube sleeves at rollers and guide.
> Fasteners & Torque Stripes: Inspect condition and verify security of all fasteners. Renew deteriorated torque stripes per Figure 2-1.

Because Gonzalez did not have mechanic's training with Robinson, he was required to be supervised

**Civil No. 09-2034 (GAG)** 4

during his inspection. Both Ricardo Vazquez ("Vazquez"), Director of Maintenance, and Carlos Martinez ("Martinez"), CAM Chief Inspector, supervised Gonzalez during the July 17, 2008 inspection. While conducting his inspection, Gonzalez noted that the hydraulic servo was leaking. After the inspection checklist was completed, Pilot Montana approved the checklist so that CAM could begin the work on the Helicopter.

RHC publishes a detailed R-44 Maintenance Manual ("RMM") for the Helicopter with specific instructions on how to conduct repairs on the Helicopter, including how to properly remove and reinstall the servo. According to the RMM, when removing the servo the technician is not required to disconnect the left upper push-pull tube from the connection at the lower swashplate ("Offending Connection").[1] The parties disagree as to how this specific repair was carried out.[2] Upon installation of the repaired servo, Martinez inspected the work performed by CAM mechanic Alex Burgos ("Burgos") and signed off that the Helicopter was airworthy.[3]

At the time of the incident, Montano held a commercial rotorcraft pilot's license issued by the FAA. Pursuant to FAA regulations, a pilot-in-command of an aircraft is directly responsible for, and is the final authority as to the operation of that aircraft. The operator is primarily responsible

---

[1] Plaintiffs contend that the in-flight separation of the left upper push-pull tube from the lower swashplate of the Helicopter was most likely the result of poor maintenance. And that it was this oversight that resulted in the helicopter crash. This connection is referred to in the parties' briefs as the "Offending Connection" and will be referred to as such in the court's opinion and order.

[2] CAM mechanic, Alex Burgos, who installed the left servo testified that he followed the RMM and did not disconnect the left upper push-pull tube from the non-rotating swashplate. Similarly, CAM Chief Inspector, Carlos Martinez stated that in order to remove the servo you do not have to remove the push-pull tube from the non-rotating swashplate of the main rotor. Contrary to these assertions, Vice President of RHC, Peter Reidl, testified that he believed based on the manner in which the crash occurred, this hardware was removed.

[3] According to his testimony, Martinez described airworthy as meaning "work that was carried out was performed according to the procedures in the manual, and that one certifies that it can fly safe."

**Civil No. 09-2034 (GAG)**                                      5

for maintaining the aircraft in airworthy condition. The Robinson R-44 Pilot Operating Book contains a pre-flight checklist, which delineates the items a pilot must inspect each time the Helicopter is to be flown. The pre-flight checklist section for the main rotor (which includes the Offending Connection) requires pilots to ensure that all fasteners are tight. Montano conducted a pre-flight inspection of the Helicopter on November 12, 2008. In his pre-flight checklist, Montano determined that the rod ends of the three push-pull tubes, including the Offending Connection, were "free but not loose." Montano also conducted pre-flight inspections on at least nine other occasions after retrieving the Helicopter from custody of CAM.[4]

Plaintiff Montano filed his complaint on November 6, 2009. The Vidal-Lampon plaintiffs filed their complaint on November 10, 2009. Plaintiff Diego Vidal Shirley filed his complaint on November 10, 2009. The Bouret plaintiffs filed their amended complaint on February 25, 2010. The various claims filed by these plaintiffs were consolidated for the purpose of pre-trial discovery on February 5, 2010. CAM then filed a third-party complaint against Montano, D&O, RHC, and their corresponding insurers. RHC filed a cross-complaint against CAM. CAM then filed the instant motion for summary judgment (Docket No. 194) on June 1, 2011. Among its arguments, CAM moved for the dismissal of all strict product liability claims filed against it in the amended complaint. Plaintiffs voluntarily dismissed any claims against CAM under a theory of strict liability (See Docket No. 204 at 5.)

**III.   Discussion**

CAM argues two main points in its motion for summary judgment: (A) CAM contends that Plaintiffs cannot make out a *prima facie* case of negligence as they are unable to demonstrate that CAM performed any work on the Offending Connection, nor that it was required to perform such work; and (B) any liability resulting from negligence involving the Offending Connection occurred solely as a result of the inspections conducted by Gonzalez and/or Montano.

---

[4] During this time the Helicopter had accumulated twelve flight hours over a four month period.

**Civil No. 09-2034 (GAG)**                                6

### A.     Plaintiff's *Prima Facie* Case of Negligence

CAM's main contention in its motion for summary judgment asserts that Plaintiffs are unable to satisfy the *prima facie* elements of a negligence claim under Article 1802.  CAM argues that Plaintiffs have provided no evidence that connects CAM's actions or omissions to the crash or the resulting damages.

Article 1802 provides for a cause of action stemming from an individual's negligent acts. Isla Nena Air Servs., Inc. v. Cessna Aircraft Co., 449 F.3d 85, 88 (1st Cir. 2006).  The statute states in pertinent part that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."  P.R. Laws Ann. tit. 31, § 5141.  A claim under Article 1802 requires that the plaintiff prove three *prima facie* elements: "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between them." Acevedo-Reinoso v. Iberia Lineas Aereas de Espana S.A., 449 F.3d 7, 15 (1st Cir. 2006) (quoting Irvine, IRG v. Murad Skin Research Labs., Inc., 194 F.3d 313, 321-22 (1st Cir. 1999)).  When the first element is based on an omission, the defendant must have had a duty to act.  Rodriguez-Quinones v. Jiminez & Ruiz, S.E., 402 F.3d 251, 254-55 (1st Cir. 2005).  Furthermore, liability will only arise under a failure to act if the damages complained of were reasonably foreseeable to the defendant.  Irvine, 194 F.3d at 321-22 (citations omitted).  Finally, "[i]n order for liability to attach, the negligent act must be the 'adequate cause' of the harm."  Tokyo Marine and Fire Ins. Co., Ltd. v. Perez & Cia., De Puerto Rico, Inc., 142 F.3d 1, 7 n. 5 (1st Cir. 1998) (citations omitted).  Adequate cause is a concept similar to proximate cause.  Id.  (citing Puerto Rico decisions explaining "adequate cause").

Puerto Rico law recognizes comparative negligence principles.  P.R. Laws. Ann. tit. 31, § 5141.  Thus, "[i]n Puerto Rico, when a negligent act is caused by the actions of more than one person, each person is a joint tortfeasor and is liable in full to the plaintiff for the harm caused." Garcia Colon v. Garcia Rinaldi, 340 F. Supp. 2d 113, 126 (D.P.R. 2004) (citations omitted).

CAM contends that Plaintiffs have failed to present any evidence showing that CAM employees performed work, or were required to perform work, on the Offending Connection that

**Civil No. 09-2034 (GAG)**                                        7

purportedly caused the crash. In support of this assertion, CAM provides ample evidence contradicting Plaintiffs' allegations. For one, the RMM, which describes the correct procedure for removing the servo does not mandate the removal of the Offending Connection. Furthermore, in his deposition, CAM Mechanic Burgos testified that he followed these written procedures and did not disconnect the Offending Connection when installing the left servo. (See Docket No. 194-21 at 4-5.) CAM Inspector, Martinez, also testified that it is unnecessary to remove the Offending Connection when installing the servo. (See Docket No. 194-18 at 3-4.) The National Transportation Safety Board's ("NTSB") report on the accident also reiterated that the RMM "revealed that removal of the left lateral cyclic servo did not require disconnection of the [] upper control tube from the swashplate. The requirement was for the removal of the [] lower control tube along with the servo." (See Docket No. 216-1 at 5.) The NTSB report also stated that "[e]xamination of the inspection and maintenance items performed during the most recent annual inspection revealed no procedures that required the disconnection of the upper left lateral servo push-pull tube rod end at the swashplate attachment ear." (See id.)

In response to these evidentiary offerings, Plaintiffs provide support for their averment that CAM's actions or omissions resulted in the separation of the Offending Connection. Plaintiffs provide the deposition testimony of RHC Vice-President, Peter Reidl ("Reidl"), in which he states that even though the RMM does not mandate the removal of the Offending Connection when installing the left servo, "clearly that hardware was removed . . . [a]nd it seems likely that it was removed at that time." (See Docket No. 204-21 at 4-5.) Similarly, the post-crash laboratory test performed at McSwain Engineering, Inc. showed that the Offending Connection's bolt backed out of its lug, releasing the left pull-push tube rod end. (See Docket No. 204-3 at 4, ¶ b.) The McSwain report further concluded that "[t]he in-flight separation of the left push-pull tube from the lower swashplate of the [Helicopter] was most likely the result of maintenance, or lack there of, performed by [CAM] during the last annual inspection performed on July 17, 2008 . . . ." (See id. at ¶ f.) According to the Helicopter's logbook, the only entity that performed maintenance on the Helicopter

**Civil No. 09-2034 (GAG)**                         8

from August 9, 2005 through November 12, 2008 was CAM.[5]

As to the alternative argument that CAM was negligent by omission, Plaintiffs cite a section of the RMM which requires that, during the annual inspection of the Helicopter, "rod end jam nuts and palnuts must be torque per Section 1.320 and torque striped . . . ."[6] Plaintiffs assert that, pursuant to this regulation, CAM had a duty to verify that the Offending Connection was secure regardless of whether said connection was removed during the maintenance performed on July 17, 2008. Plaintiffs present evidence that CAM failed to comply with these requirements. Montano testified that during his pre-flight check he noticed that the Offending Connection did not have torque stripe.[7] (See Docket No. 204-8 at 6, L. 8-19.) Consistent with this testimony, post-crash inspection of the Helicopter demonstrated that torque stripes were missing at the forward right hand upper push-pull tube, and in four other places in the area where the lower push-pull tubes were connected to the left servo of the Helicopter. (See Docket Nos. 204-3 at 4, ¶ d; 204-17 at 4, ¶ 11.) CAM contradicts these allegations of omission with the depositions of Martinez and Gonzalez who both testified that the hardware at the Offending Connection was torque striped. (See Docket Nos. 194-19 at 14-15; 194-18 at 7-8.) CAM also presents expert testimony and photographs contradicting

---

[5] Plaintiffs also support this assertion with Montano's statement that he did not conduct maintenance on the Helicopter. (See Docket No. 204-8 at 7.) CAM opposes this fact citing Montano's previous work with the Helicopter as occasions of maintenance. Regardless, these evidentiary contradictions are sufficient to establish a material issue of fact with regard to who had performed maintenance on the Helicopter during the relevant period.

[6] "Torque stripe" is a paste or paint mark used to provide a visual indication that a connection has not loosened or slipped. (See Docket Nos. 194-24 at 3, L. 5-7; 194-19 at 9.)

[7] Montano said he brought this to the attention of a CAM mechanic, however, he was told that it was okay to fly the Helicopter without the torque stripe. (See Docket No. 204-8 at 6, L. 17-24.) In its reply brief, CAM identifies inconsistencies in Montano's deposition testimonies regarding whether he remembered if the connections were torque striped at the time of his pre-flight inspection.

**Civil No. 09-2034 (GAG)**                                                9

the opinions and conclusions reached by Plaintiff's experts regarding the presence of torque stripe on these connections. (See Docket Nos. 211-4 at 2-6; 211-5.)

In considering all of the evidence presented by both parties, the court finds that a genuine issue of material fact exists as to the alleged actions or omissions by CAM during the 2008 annual inspection of the Helicopter. The contradicting testimony and contravening expert reports present a factual issue that must be presented to a jury. Accordingly, the court **DENIES** CAM's motion for summary judgment on the issue of Plaintiffs' ability to demonstrate the *prima facie* elements of their negligence claim against CAM.

### B.    Intervening or Superseding Causes of the Crash

CAM argues in the alternative that any potential liability on its part is superseded by the negligent inspections conducted by Gonzalez and/or Montano. CAM contends that Gonzalez's and Montano's respective failures to discover the purportedly loose Offending Connection represent intervening and superseding causes that sever the chain of causation.

Under Puerto Rico law, "intervening causes can break the chain of causation if they are not foreseeable." Malave-Felix v. Volvo Car Corp., 946 F.2d 967, 972 (1st Cir. 1991) (analyzing Puerto Rico tort law). A person is only liable for injuries that a prudent person reasonably could anticipate. Id. at 962 (internal citations omitted). The question of whether an intervening cause of an injury was reasonably foreseeable is usually one reserved for the jury. See Napier v. F/V DEESIE, Inc., 454 F.3d 61, 69 (1st Cir. 2006) (citing Springer v. Seaman, 821 F.2d 871, 876 (1st Cir.1987)) ("[I]ssues of foreseeability and superseding cause are properly for the jury to decide when there may be reasonable differences in opinion."); Marshall v. Perez Arzuaga, 8282 F.2d 845, 849 (1st Cir. 1987) ("[n]ot only ordinary fact questions, but also 'evaluative applications of legal standards (such as the concept of legal 'foreseeability' to the facts' are properly jury questions"); see also Díaz Irizarry v. Ennia, N.V., 678 F. Supp. 957, 959 (D.P.R.1988) ("The question of foreseeability is for the jury. Because it is an evaluative application of a legal standard to the facts, a reasonable difference of opinion might exist and the jury must decide. . . . Though under Puerto Rico law the judge decides foreseeability issues, federal law controls the division of responsibility between the

**Civil No. 09-2034 (GAG)**                                    10

judge and the jury.") (citations omitted). Thus, unless there is no genuine issue of material fact as to reasonble foreseeability, the question of whether one party's negligent act constitutes a superseding cause must be submitted to the jury.[8]

---

[8] In Marshall v. Perez Arzuaga, 828 F.2d at 849, the First Circuit at the time recognized that Puerto Rico is a civil law jurisdiction that historically never used juries in civil cases before the courts of the Commonwealth. Notwithstanding such traditional notion, "[t]he Seventh Amendment, however, most decidedly affords litigants in federal court in Puerto Rico the right to trial by jury, and it is federal law that must define the contours of that right . . . ." Id. (citations omitted). In light of this, the undersigned feels strongly compelled to note that today in 2011 Puerto Rico is the only United States jurisdiction in which its American citizens are not afforded any right to trial by jury in civil cases before local courts. See Gustavo A. Gelpi, *The Insular Cases: A Comparative Historical Study of Puerto Rico, Hawai'i, and the Phillippines,* 58 The Federal Lawyer 22, 24, n.11(Mar./Apr. 2011) (noting that the U.S. citizen litigants in the U.S. Virgin Islands, Guam and the Commonwealth of the Northern Mariana Islands are afforded the right to civil jury trial, and that also Louisiana, a civil law jurisdiction, provides jury trials in civil cases). From a judicial perspective, this creates a significant constitutional anomaly for litigants in this jurisdiction. It is the underlying reason scores of plaintiffs will go to unsurmountable lengths (i.e. relocating to the U.S. mainland) to create diversity jurisdiction, and hence obtain a jury trial.

The undersigned further notes, both from a judicial and historical perspective, that in this District as well as in the First Circuit, it is a well-settled and long-standing principle that in diversity cases the Seventh Amendment bestows upon United States citizens in Puerto Rico all its guarantees. E.g., Marshall, 828 F.2d at 849. Such constitutional provision, like numerous others, has been fully incorporated in Puerto Rico as if it were a State of the Union. The right to be judged by your peers in civil cases is thus a constitutionally protected Fundamental Right. It is one of the most long-standing natural rights in our legal system, having derived originally from the Magna Carta. Such judicial reality, hence, cannot tolerate any form of state-federal court constitutional segregation as it pertains to the Seventh Amendment rights of the nearly four million American citizens residing in Puerto Rico.

Archaic and ill-conceived notions that the right to jury trials does not constitutionally extend to Puerto Rico (Balzac v. Puerto Rico, 258 U.S. 298 (1922)) are a thing of the past. See People of Puerto Rico v. Santana Velez, 177 D.P.R. 61, 65 and n.1 (2009) (in which the Puerto Rico Supreme Court recognized that the Sixth Amendment right to jury trial in criminal cases applies under Duncan v. Louisiana, 391 U.S. 145 (1968), and that said right extends to Puerto Rico under the doctrine of territorial incorporation); see also Santana Velez, 177 D.P.R. 80, 84 (Martinez Torres, J., concurring) (holding that "[t]o acknowledge the continuing validity of Balzac following Duncan v. Louisiana would negate equality of fundamental rights to United States citizens in Puerto Rico, something contrary to Congress' intent that Puerto Rico be treated in a manner analogous to that of a federated state and our own constitutional duty of guaranteeing federal constitutional justice").

In the undersigned's opinion, the Commonwealth Supreme Court's rationale in Santana Velez extends to civil jury trials in Puerto Rico courts by virtue of the Seventh Amendment, be it through the Fourteenth Amendment, the Privileges and Immunities Clause, or any of the

**Civil No. 09-2034 (GAG)**                              11

CAM argues that any liability resulting from its alleged negligence is superseded by the negligent inspection conducted by Gonzalez, who is not an employee of CAM. CAM alleges that it was not reasonably foreseeable that Gonzalez, a certified IA, would fail to ensure that the Offending Connection was secure when the annual inspection checklist expressly required that it was examined. (See Docket No. 194-23 at 22.) Gonzalez's alleged negligence is contravened by his deposition testimony as well as the inspection checklist indicating that the Offending Connection was checked during the inspection. (See Docket Nos. 194-19 at 13-16; 194-23.) Thus, a factual issue exists as to whether or not Gonzalez was actually negligent in the performance of his duties.

Plaintiffs further contend that regardless of whether or not Gonzalez acted negligently in performing his inspection, CAM had a non-delegable duty to inspect every aircraft that it worked on prior to approving its return to service. To support this claim, Plaintiffs cite various sections of CAM's FAA approved Repair Station/Training Manual detailing this obligation.[9] Plaintiffs also bolster their claim by pointing out that Gonzalez was supervised by both Vazquez and Martinez while conducting his inspection, and therefore aver that any negligent act by Gonzalez may be

---

incorporation doctrines. Although said constitutional provision refers to "suits at common law", the Seventh Amendment requires trial by jury in civil law jurisdictions such as Louisiana and Puerto Rico when the civil law cause of action is the equivalent of a common law cause of action (i.e., actions for damages in tort or breach of contract). See In re N-500L Cases, 517 F. Supp. 821, 823 (D.P.R. 1981) (Torruella, J.)

At this time, it behooves the courts of Puerto Rico, and ultimately its Supreme Court, to affirmatively recognize the fundamental right to civil trial by jury in actions arising under the common law or their equivalent under the civil law. Only then will Puerto Rico cease to be the only United States jurisdiction in which U.S. citizens have the guarantees of the Seventh Amendment "switched on and off" depending on the forum where the case is being tried.

[9] Sections III and IV of the manual expressly state that the CAM Chief Inspector: "will have the final authority in releasing to service of air frames" and "assuring the proper execution of inspections . . . and authorizations to release a product to return to service." (See Docket No. 204-24 at 3); "is responsible for the complete and efficient performance of inspections assigned to the Repair Station and assuring that all inspections are performed in accordance with the specification of the appropriate manual or other approved technical data." (See id. at 4); must "determine that all work has been inspected as required for compliance with this inspection system and FAR Section 145.59 (a) (See id. at 5).

**Civil No. 09-2034 (GAG)**                                  12

attributable to CAM for failing to provide proper supervision.[10] (See Docket No. 204-11 at 6, L. 7-12.) Each of these theories is supported by admissible evidence, and thus, creates genuine issues of material fact that must be submitted to a jury.

CAM also asserts that its acts or omissions cannot be considered a proximate cause of the crash because Montano did not properly conduct pre-flight inspections after the Helicopter was returned to service. CAM cites three cases in support of its position that Montano's alleged negligence constitutes a superseding event that severed the chain of causation. See Fine v. Schneider Air Serv., Inc., 671 N.Y.S. 2d 509, 510 (2d Dep't 1998); Kroon v. Beech Aircraft Corp., 628 F.2d 891, 892 (5th Cir. 1980); Lock v. Packard Flying Serv., 173 N.W.2d 516, 518-20 (Neb. 1970). While the cited cases do stand for the stated proposition, the court is not persuaded that the facts of this case necessarily dictate a similar result. Montano's deposition testimony recounts his various pre-flight inspections leading up to and on the date of the crash. According to his testimony, Montano conducted each of his pre-flight requirements and even inquired into the absence of a torque stripe on the Offending Connection but was told that he could fly without a problem. (See Docket Nos. 204-7 at 26; 204-8 at 6.) Furthermore, RHC's expert, Charles Thomas Webster, testified that Montano properly checked the Offending Connection when conducting his pre-flight inspection. (See Docket No. 204-18 at 14-15.) In contrast, CAM presents expert testimony that concludes, based on the depositions of Burgos and Montano, that Montano was negligent for (a) failing to use a ladder to reach the required height to properly inspect the Helicopter and (b) not grounding the Helicopter after identifying the absence of a torque stripe on the Offending Connection. (See Docket No. 211-4 at 15, 22.) When considering the contradictory evidence presented by both parties, the court is unable to determine, as a matter of law, that Montano acted

---

[10] The parties present contradicting evidence on whether or not it was required that Gonzalez was supervised during the annual inspection. Plaintiffs contend that because he had not received training from RHC, Gonzalez was unable to perform this inspection without the supervision of CAM RHC-trained mechanics Vazquez and Martinez. However, regardless of whether such supervision was mandatory, it is undisputed that Gonzalez was supervised during his inspection by CAM employees.

**Civil No. 09-2034 (GAG)**                               13

negligently in performing his pre-flight inspections.

However, regardless of whether Montano or Gonzalez were negligent in conducting their respective inspections, the court finds that the question of whether their alleged negligence was sufficiently unforeseeable as to sever CAM's liability is one reserved for the jury. See Swift v. United States, 866 F.2d 507, 510 (1st Cir. 1989) ("Application of the legal cause standard to the circumstances of a particular case is a function ordinarily performed by, and peculiarly within the competence of, the fact-finder."). Accordingly the court **DENIES** summary judgment as to this issue.

### IV.   Conclusion

For the foregoing reasons, the court **DENIES** CAM's motion for summary judgment (Docket No. 194). All claims, save the voluntarily dismissed product liability claim against defendant CAM, remain before the court.

**SO ORDERED**

In San Juan, Puerto Rico this 25th day of August, 2011.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge