IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**LIZZETTE M. BOURET ECHEVARRIA, et al.,**

    Plaintiffs,

    v.

**CARIBBEAN AVIATION MAINTENANCE CORP., et al.,**

    Defendants.

Consolidated Cases:
Civil No. 09-2034 (GAG)
Civil No. 09-2142 (GAG)
Civil No. 09-2158 (GAG)
Civil No. 09-2160 (GAG)

**ORDER**

Plaintiffs filed the present action against Robinson Helicopter Co. ("Robinson"), Caribbean Aviation Maintenance, Corp. and Chartis Insurance Company - Puerto Rico ("CAM Defendants") (collectively "Defendants") for the events that led to the death of Diego Vidal Gonzalez ("Vidal Gonzalez"). On November 12, 2008, a helicopter piloted by Jose A. Montano ("Montano") and carrying Vidal Gonzalez suffered severe damage while attempting to land at the Fernando Luis Ribas Dominicci Airport. Vidal Gonzalez was rushed to the Rio Piedras Medical Center where he was treated for injuries. Vidal Gonzalez lapsed into a coma and died 59 days later. Through the various consolidated actions Vidal Gonzalez's widow and three children, his son, his father and sisters, and Montano (collectively "Plaintiffs") brought suit against Defendants for damages, claiming it was the negligence of Defendants that led to the death of Vidal Gonzalez.

The present matter involves CAM Defendants' motion *in limine* (Docket No. 286) to preclude co-defendant Robinson from presenting at trial the expert testimony of accident reconstructionist, Kenneth Orloff ("Orloff"), particularly, his testimony regarding faulty helicopter maintenance provided by CAM's mechanics. According to CAM Defendants, Orloff's testimony is unsubstantiated and speculative, and therefore, unreliable under Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597 (1993). Co-defendant Robinson opposed this motion (Docket No. 338). After reviewing the pleadings and pertinent law, the court **DENIES** CAM Defendants' motion *in limine*

at Docket No. 286.

## I.   Legal Standard

The admission of expert testimony is governed by Federal Rule of Evidence 702. That rule provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702.

The trial court acts as a gate-keeper as the judge must ensure an expert's testimony is both relevant and is based on a reliable foundation. See Daubert, 509 U.S. 579 at 597 (1993); U.S. v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002).

The Daubert Court identified four factors that may assist the trial court in determining whether or not scientific expert testimony was reliable: "(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." Mooney, 315 F.3d at 62 (citing Daubert, 509 U.S. at 593–94). These factors were later held to apply to all expert testimony, not just scientific testimony. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). The factors are not a checklist for the trial judge to follow, but rather the inquiry is a flexible one, allowing the trial judge to determine and adapt these factors to fit the particular case at bar. See Kumho, 526 U.S. at 150; Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 15-16 (1st Cir. 2011). "Proponents . . . do not have to demonstrate that the assessments of their experts are correct, only that their opinions are reliable." Rivera-Cruz v. Latimer, Biaggi, Rachid & Godreau, LLP, 2008 WL 2446331 at *2 (D.P.R. June 16, 2008) (citing Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)). While the general focus of this inquiry is the principles and methodology relied upon by the expert, the court may consider the congruity of the data and the opinion proffered by the expert. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (holding a court may conclude there is too great an

analytical gap between data and the opinion proffered); Ruiz–Troche, 161 F.3d at 81.

## II.  Legal Analysis

CAM Defendants move to preclude the following opinion found in Orloff's report:

> [t]he physical evidence suggests that prior to the accident the left control tube upper rod end bearing was left improperly attached to the stationary swashplate.  The evidence and maintenance history of the accident aircraft suggest that the left-hand upper push-pull tube hardware was not reinstalled correctly after maintenance during the annual inspection.  If not, then, for whatever reason, it was left in that condition at some time between the last inspection and the accident, and no record was made of the work performed.

(See Docket No. 286 at 2.)  CAM Defendants contend that Orloff's opinion regarding the helicopter maintenance conducted by CAM is based on unsupported speculation as it lacks a reliable evidentiary foundation.  (See id.)  They argue that Orloff's opinion testimony regarding the helicopter maintenance should be excluded because, "there is no evidence in the record that any CAM mechanic disconnected and/or reconnected the left push-pull tube connection to the non-rotating swashplate of the subject helicopter during the most recent annual inspection."  (See id.)  CAM Defendants further argue Orloff's expert testimony contradicts the following evidence on record: (1) the National Transportation Safety Board's ("NTSB") findings during the investigation of the accident that "[e]xamination of the inspection and maintenance items performed during the most recent annual inspection revealed no procedures that required the disconnection of the upper left lateral servo push-pull tube rod end at the swashplate attachment ear[;]"[1] and (2) the deposition testimony of Mr. Alexis Burgos ("Burgos"), the CAM mechanic who performed repairs during the last annual inspection of the helicopter prior to the accident, declaring he never disconnected the left push-pull tube from its top connection to the nonrotating swashplate because the manual did not instruct him to do so.[2]  (See Docket No. 286 at 4.)

In its opposition, Robinson argues Orloff's opinions are grounded on a reliable foundation,

---

[1] (See Docket No. 286-2 at 5.)

[2] (See Docket No. 286-3 at 4-5.)

Civil No. 09-2034 (GAG)                    4

including evidence on the record validated by the NTSB itself. (See Docket No. 338 at 2.) Robinson maintains there is no "analytical gap" warranting the exclusion of Orloff's testimony as Orloff's report references the physical and documentary evidence reviewed in support of his opinion. (See Docket No. 338 at 4.) The court agrees.

Upon review of the record, the court finds that Orloff's expert testimony is based on sufficient facts or data. In this case, Orloff examined "engineering reports, deposition testimony, accident site and wreckage photographs, accident investigation reports, helicopter maintenance and historical records, maintenance manual, illustrated parts catalog, and inspection checklists." (See Docket No. 286-1 at 2.) Among the documents he reviewed were the NTSB Factual Report and the deposition of Alexis Burgos. (See Docket No. 286-1 at 3.)

When addressing CAM's maintenance actions in his report, Orloff acknowledges that the maintenance manual does not require the removal of the upper attachment between the push-pull tube and the non-rotating swashplate for the maintenance operation. (See Docket No. 286-1 at 9.) Orloff considered the declarations made by FAA-licensed Airframe and Power Plant Mechanic with FAA Inspection Authorization Ruben A. Gonzalez ("Gonzalez"), the inspector who performed the annual inspection on the helicopter prior to the accident, and found that there had been work completed on the helicopter that was not entered in the logbooks. (See id.) More so, Orloff's report also states that Gonzalez was unaware of who performed maintenance or servicing on the helicopter between annual inspections. (See id.) The NTSB Factual Report contains the same information. (See Docket No. 286-2 at 3-4.)

Following this particular accident, the NTSB conducted an investigation, which culminated in the creation of the Factual Report. The court notes that the NTSB is an independent federal government agency tasked with investigating transportation accidents impartially, and therefore finds the NTSB Factual Report to be reliable. Any flaws in Orloff's opinion go to the weight of the evidence, rather than to admissibility. Challenges to the methodology used by an expert witness are usually adequately addressed by cross-examination. See United States v. Diaz, 300 F.3d 66, 76-77 (1st Cir. 2002); Daubert, 509 U.S. at 596 (noting that "vigorous cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). "[E]xpert opinions that are speculative do not need to be excluded as long as the opposing counsel has an opportunity for cross-examination in order to expose any weaknesses in the underpinnings of the expert testimony." Carrelo v. Advanced Neuromodulation Sys., Inc., 777 F. Supp. 2d 315, 319 (D.P.R. 2011) (citing United States v. Vargas, 471 F.3d 255, 264 (1st Cir. 2006)). Because the issues raised by CAM Defendants go to the weight of the testimony and not to the admissibility requirement of Rule 702, the court will not exclude Orloff's expert testimony regarding faulty maintenance.

### III. Conclusion

For the reasons set forth above, the court **DENIES** CAM Defendants' motion *in limine* at Docket No. 286.

**SO ORDERED**.

In San Juan, Puerto Rico this 19th day of January, 2012.

*S/ Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge