IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**LIZZETTE M. BOURET ECHEVARRIA, et al.,**

   Plaintiffs,

   v.

**CARIBBEAN AVIATION MAINTENANCE CORP., et al.,**

   Defendants.

Consolidated Cases:
Civil No. 09-2034 (GAG)
Civil No. 09-2142 (GAG)
Civil No. 09-2158 (GAG)
Civil No. 09-2160 (GAG)

## ORDER

Plaintiffs filed the present action against Robinson Helicopter Co. ("Robinson"), Caribbean Aviation Maintenance, Corp. and Chartis Insurance Company - Puerto Rico ("CAM Defendants") (collectively "Defendants") for the events that led to the death of Diego Vidal Gonzalez ("Vidal Gonzalez"). On November 12, 2008, a Robinson R-44 helicopter piloted by Jose A. Montano ("Montano") and carrying Vidal Gonzalez suffered severe damage while attempting to land at the Fernando Luis Ribas Dominicci Airport. Vidal Gonzalez was rushed to the Rio Piedras Medical Center where he was treated for injuries. Vidal Gonzalez lapsed into a coma and died 59 days later. Through the various consolidated actions, Vidal Gonzalez's widow and three children ("Bouret Plaintiffs"), his son ("Vidal-Shirley"), his father and sisters ("Vidal-Lampon Plaintiffs"), and Montano (collectively "Plaintiffs") brought suit against Defendants for damages claiming it was the negligence of Defendants that led to the death of Vidal Gonzalez.

The present matter involves four motions *in limine* filed by CAM Defendants to exclude Bouret Plaintiffs' expert witnesses, Colin Sommer (Docket No. 300), Luis Irizarry (Docket No. 301), Mark Hood (Docket No. 302) and William Lawrence (Docket No. 303), from testifying at trial. Bouret Plaintiffs filed a response in opposition to all four motions (Docket No. 335). After reviewing the pleadings and pertinent law, the court **DENIES** Docket No. 300, **GRANTS IN PART** and **DENIES IN PART** Docket No. 301, **DENIES** Docket No. 302, and **DENIES** Docket No. 303.

**I.      Legal Standard**

The admission of expert testimony is governed by Federal Rule of Evidence 702. That rule provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702.

**A.      Qualifications**

Before accepting expert testimony, a district court must determine whether the witness is "qualified as an expert by knowledge, skill, experience, training, or education." FED.R.EVID. 702. "It is well-settled that 'trial judges have broad discretionary powers in determining the qualification, and thus, the admissibility, of expert witnesses.'" Diefenbach v. Sheridan Transp., 229 F.3d 27, 30 (1st Cir. 2000) (quoting Richmond Steel, Inc. v. Puerto Rican Am. Ins. Co., 954 F.2d 19, 20 (1st Cir. 1992)). There is no mechanical formula for determining whether an expert is qualified to offer opinion evidence in a particular field. Santos v. Posadas De Puerto Rico Assocs., Inc., 452 F.3d 59, 63 (1st Cir. 2006). "The test is whether, under the totality of circumstances, the witness can be said to be qualified as expert in a particular field, through any one or more of the five bases enumerated in Rule 702 –knowledge, skill, experience, training, or education." Id. at 63-64 (citations omitted).

**B.      Reliability**

The trial court acts as a gate-keeper as the judge must ensure an expert's testimony is both relevant and is based on a reliable foundation. See Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597 (1993); U.S. v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002).

The Daubert Court identified four factors that may assist the trial court in determining whether scientific expert testimony is reliable: "(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." Mooney, 315 F.3d at 62 (citing Daubert, 509 U.S. at 593–94). These

factors were later held to apply to all expert testimony, not just scientific testimony. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). The factors are not a checklist for the trial judge to follow, but rather the inquiry is flexible, allowing the trial judge to determine and adapt these factors to fit the particular case at bar. See Kumho, 526 U.S. at 150; Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 15-16 (1st Cir. 2011).

"Daubert does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." Milward, 639 F.3d at 15 (citations omitted) (internal quotation marks omitted). "The proponent of the evidence must show only that 'the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion.'" Id. "[T]he proponent of the evidence has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Rivera-Cruz v. Latimer, Biaggi, Rachid & Godreau, LLP, 2008 WL 2446331 at *2 (D.P.R. June 16, 2008). While the general focus of this inquiry is the principles and methodology relied upon by the expert, the court may consider the congruity of the data and the opinion proffered by the expert. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (holding court may conclude there is too great an analytical gap between data and the opinion proffered); Ruiz–Troche, 161 F.3d at 81. "Nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Gen. Electric Co., 522 U.S. at 146.

**II.     Legal Analysis**

    **A.     Colin Sommer (Docket No. 300)**

CAM Defendants' motion *in limine* at Docket No. 300 moves to preclude Bouret Plaintiffs from presenting at trial the expert testimony of accident reconstructionist, Colin Sommer ("Sommer"). Particularly, his opinions regarding helicopter maintenance and piloting issues because he is not qualified in either area.[1]

---

[1] The court notes Sommer's qualifications as an expert regarding piloting issues are not

**Civil No. 09-2034 (GAG)**                                      4

CAM Defendants contend Sommer is not qualified to testify on the propriety of helicopter maintenance and the adequacy of CAM's compliance with Federal Aviation Administration ("FAA") Regulations because he lacks the requisite knowledge, skill, experience, training, and education in these areas. (See Docket No. 300 at 2.) Particularly, CAM Defendants move to preclude opinions 9 through 12 of Sommer's report, which address maintenance and inspections procedures. (See Docket No. 300-1 at 13 ¶¶ 9-12.) CAM Defendants argue these opinions should be precluded because Sommer has never been authorized by the FAA to perform any of the maintenance tasks complained of, has never managed a FAA-Certified Repair Station, does not possess a FAA Airframe and Power Plant ("A&P") mechanic's certificate and does not posses an Inspection Authorization ("IA") certificate. (See Docket No. 300 at 6.)

Bouret Plaintiffs argue Sommer is qualified to testify as to the maintenance procedures discussed in the opinion due to his training as an aircraft accident investigator, his work experience under the supervision of a licensed A&P mechanic with an IA certificate, his participation in numerous annual inspections, and his licenses as a professional engineer. The court agrees.

Sommer is a licensed professional engineer in Michigan and Colorado. (See Docket No. 300-1 at 17.) According to his curriculum vitae ("CV"), Sommer has attended Aircraft Accident Investigator Training Programs at the National Transportation Safety Board Academy and the Southern California Safety Institute, both of which include training in aircraft maintenance training. (See Docket No. 300-1 at 16.) His CV indicates he has personally investigated accidents involving Robinson helicopters. (See Docket No. 300-1 at 17-18.) Sommer specializes in helicopter accident reconstruction analysis and testing, as well as FAA Regulations. (See Docket No. 300-1 at 18.) The fact that Sommer does not hold a FAA A&P mechanic's certificate with inspection authorization is not dispositive, but it is a factor in the analysis. Based on Sommer's experience, education and training, the court finds his opinion regarding helicopter maintenance to be within the scope of his expertise.

CAM Defendants further move to preclude Sommer's opinion regarding helicopter

---

addressed in CAM Defendants' motion. Therefore, his expert testimony in this area is unchallenged.

maintenance conducted by CAM, arguing it is based on unsupported speculation as it lacks a reliable evidentiary foundation. (See Docket No. 300 at 6.) According to opinion 9 of Sommer's report, "[CAM Defendants] performed maintenance on the upper left push-pull tube during the annual inspection which was completed on 17 July 2008." (See Docket No. 300-1 at 13 ¶ 9.) CAM Defendants argue, "there is no evidence in the record that any CAM mechanic disconnected and/or reconnected the left push-pull tube connection to the non-rotating swashplate of the subject helicopter during the most recent annual inspection." (See Docket No. 300 at 6-7.)

CAM Defendants reference: (1) the National Transportation Safety Board's ("NTSB") findings during the investigation of the accident that, "[e]xamination of the inspection and maintenance items performed during the most recent annual inspection revealed no procedures that required the disconnection of the upper left lateral servo push-pull tube rod end at the swashplate attachment ear[;]"[2] and (2) the deposition testimony of Mr. Alexis Burgos ("Burgos"), the CAM mechanic who performed repairs during the last annual inspection of the helicopter prior to the accident, declaring he never disconnected the left push-pull tube from its top connection to the nonrotating swashplate because the manual did not instruct him to do so.[3] (See Docket No. 300 at 7-8.)

Upon review of Sommer's report, the court finds his opinion on the maintenance performed by CAM mechanics to be based on sufficient facts and data. Although Sommer does not specifically mention he reviewed Burgos' deposition, he did review depositions and NTSB Reports prior to rendering his report. (See Docket No. 300-1 at 15.) Additionally, when addressing CAM's maintenance actions, Sommer references logbook entries. (See Docket No. 300-1 at 6.) The cumulation of these facts demonstrate Sommer sufficiently relies on facts to reach his conclusions. Because the court finds Sommer to be qualified as an expert and to have applied reliable methods to the facts, the court **DENIES** CAM Defendants' motion at Docket No. 300.

---

[2] (See Docket No. 300-3 at 5.)

[3] (See Docket No. 300-4 at 4-5.)

**B.     Luis Irizarry (Docket No. 301)**

CAM Defendants' motion *in limine* at Docket No. 301 moves to preclude Luis Irizarry's ("Irizarry") expert testimony regarding helicopter maintenance and the administration of a FAA-Certified Aircraft Repair Station because he lacks the requisite knowledge, skill, experience, training, and education in these areas. (See Docket No. 301 at 2.) Particularly, CAM Defendants move to preclude opinions 4, 6 and 11 of Irizarry's expert report, which address maintenance, installation and inspection procedures at CAM's facility. (See Docket No. 301-1 at 19 ¶¶ 4, 6, 11.) CAM Defendants argue these opinions should be precluded because Irizarry has no credentials or training with respect to helicopter maintenance and has never worked as a mechanic on any type of helicopter. (See Docket No. 301 at 5.)

In their opposition, Bouret Plaintiffs point to Irizarry's training and experience as a flight instructor and pilot for the last 36 years as qualification to testify on helicopter maintenance and the administration of an FAA Repair Station. (See Docket No. 335 at 13.) The court disagrees that this experience makes Irizarry an expert as to the maintenance issue.

Although inspections and mechanical work have a common nexus with piloting as pilots are required to inspect the aircraft prior to flight, and Irizarry received training to qualify as a pilot-in-command of a helicopter during the late 1980s, he is not a certified helicopter pilot. (See Docket No. 301-2 at 4.) Irizarry's CV reveals he has logged 14,680.9 hours of flight experience, but it does not indicate whether he has flight experience with helicopters. (See Docket No. 301-7 at 4.) Irizarry has never worked as a mechanic on any helicopter model, nor has he participated in the maintenance of a helicopter. (See Docket No. 301-2 at 5.) Accordingly, the court finds his opinions on helicopter maintenance –opinions 4 and 6– to not be within the scope of his expertise. However, based on Irizarry's experience and training as an aircraft pilot, the court finds he is qualified to proffer an expert opinion as to the administration of a FAA Repair Station that maintains aircrafts.

Because CAM Defendants' reliability argument as to Irizarry's expert testimony is in regard to opinion 6, the court need not address it. (See Docket No. 301 at 6.) Therefore, the court **GRANTS IN PART** and **DENIES IN PART** CAM Defendants' motion *in limine* at Docket No. 301. Irizarry is barred from proffering his opinion as to helicopter maintenance.

  C.  **Mark Hood (Docket No. 302)**

  CAM Defendants' motion *in limine* at Docket No. 302 moves to preclude Mark Hood's ("Hood") expert testimony because he lacks experience and knowledge in mechanics. (See Docket No. 302 at 2.) CAM Defendants do not seek to bar Hood's testimony as a metallurgist, but rather only seek to bar his opinions as they pertain to maintenance issues. (See id.) Specifically, CAM Defendants seek to preclude Hood from testifying as to opinions 8 and 10 of his expert report. (See Docket No. 302 at 2-3.)

  Bouret Plaintiffs respond highlighting Hood's vast experience with accident reconstruction and crash investigations. (See Docket No. 335 at 16.) Hood has a master's degree from Auburn University and has worked as a materials engineer and as a consultant since 1985. (See Docket No. 335-4.) Hood is a member of the American Society for Non-Destructive Testing and has participated in conferences discussing the application of these skills in laboratories. (See id.) His opinions are mainly derived from his examination of the wreckage and literature reviewed associated with the helicopter and the crash. (See Docket No. 335 at 19-21.) It is uncontested that he is an expert in metallurgy and accident reconstruction.

  To the extent his opinions enter the realm of mechanics and maintenance, his opinions are grounded in his areas of expertise, particularly accident reconstruction. Hood's opinion that the helicopter could become uncontrollable if the left push-pull tube became disconnected in flight and his opinion that this separation occurred due to maintenance relates to his expertise in accident reconstruction, as well as metallurgy. The court does not look at each opinion in a vacuum. The broad experiences and expertise gained from having been involved in multiple accident reconstructions, and applying his specific expertise in metallurgy to those reconstructions allows Hood to opine as to the possible reasons the helicopter crashed. An expert in accident reconstruction and metallurgy can properly testify, so long as the testimony is based on fact and arrived at through reliable methods, as to why the helicopter crash occurred. When expert testimony is based on complex issues, the testimony should not be excluded merely for fear the jury will not understand the testimony, but it should be admitted and subjected to vigorous cross-examination. See Milward,

**Civil No. 09-2034 (GAG)**                        8

639 F.3d at 15. Therefore, the court **DENIES** CAM Defendants' motion *in limine* to preclude Hood from testifying as to maintenance issues (Docket No. 302).

      **D.**      **William Lawrence (Docket No. 303)**

CAM Defendants' motion *in limine* at Docket No. 303 moves to preclude William Lawrence's ("Lawrence") expert testimony, specifically, opinions 2-5, 7-8 and 10 of his report regarding the piloting skills and qualifications of the R-44 helicopter's pilot. (See Docket No. 303 at 3-5.) CAM Defendants contend Lawrence is not qualified to testify because he lacks the requisite knowledge, skill, experience, training, or education to render an expert opinion as to the piloting of a Robinson R-44 helicopter. (See Docket No. 303 at 5.)

Bouret Plaintiffs argue Lawrence is an expert due to, among other things, his 40-plus years of flight experience with over 5,000 hours in 120 types of fixed wing and helicopter models. (See Docket No. 335 at 22.) The court agrees with Bouret Plaintiffs' assessment.

Lawrence is a graduate of the U.S. Navy Test Pilot School. (See Docket No. 303-4.) In addition to having more than 40 years of flight experience, Lawrence has 10 years experience in helicopter flight tests. (See id.) His CV indicates he has extensive experience with light, medium and heavy utility, transport and attack helicopters. (See id.) Lawrence was the senior active test pilot in the Marine Corps and in command of all rotorcraft flight testing for the U.S. Marine Corps, U.S. Navy and U.S. Coast Guard. (See id.) Lawrence has worked with "project flights" involving over 150 projects in 60 types of helicopters and fixed wing aircraft. (See id.) He has extensive experience in the evaluation of helicopter flight characteristics as the result of aircraft systems failures. (See Docket No. 303-1 at 3.) Lawrence also has rotary wing combat experience in Vietnam and Desert Storm. (See Docket No. 303-4.) The fact that Lawrence has no R-44 helicopter training, has never piloted a R-44 helicopter and is not a FAA-Certified flight instructor is not dispositive. Based on Lawrence's education, experience, knowledge, training and skill, the court finds his opinions regarding piloting skills and qualifications to be within the scope of his expertise.

CAM Defendants's further argue Lawrence's opinions are unreliable because the majority of his opinions are based on the following unsupported assumptions: (1) disconnection of any one

**Civil No. 09-2034 (GAG)**                              9

of the servos renders the helicopter uncontrollable, and (2) the Robinson R-44 helicopter pilot's qualifications on November 12, 2008, whether legal or illegal, were not in the chain of events causing the crash. (See Docket Nos. 303 at 9; 303-1 at 20-21 ¶¶7, 10.) The court disagrees.

Lawrence's testimony is limited to a rebuttal of piloting issues contained in Philip Greenspun's ("Greenspun") expert report. (See Docket No. 303-1 at 1-2.) In addition to Greenspun's report, Lawrence reviewed other materials such accident reports. (See Docket No. 303-1 at 3-4.) Lawrence's opinions are not only supported by his research for the case and his analysis of Greenspun's opinion, but by his knowledge, vast professional experience and training. For the reasons stated above, the court **DENIES** CAM Defendants' motion *in limine* to preclude Lawrence's testimony as an expert witness.

### E. Federal Rule of Evidence 403 Analysis

CAM Defendants' final argument to preclude the testimony of Bouret Plaintiffs' expert witnesses is almost identical for all four. CAM Defendants contend the opinions of Sommer, Irizarry, Hood and Lawrence should be excluded pursuant to Federal Rule of Evidence 403 because it would needlessly present cumulative evidence. See FED.R.EVID. 403 (stating "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.") Expert testimony is subject to exclusion pursuant to Rule 403. See U.S. v. Pires, 642 F.3d 1, 12 (1st Cir. 2011). In ruling to exclude evidence based on Rule 403, the trial court has wide latitude to apply the Rule to the facts of the case. See U.S. v. St. Pierre, 599 F.3d 19, 22 (1st Cir. 2010).

In a case such as this, where the issues are complex and each expert has a different area of expertise, the court finds it may be helpful to the jury to hear the testimony of each expert. While the possibility remains that the jury will hear some of the evidence twice, the repetition will not create undue prejudice against any particular party to the extent the court should preclude the evidence based on Rule 403. Of the witnesses found to be experts by the court, each frame the issues differently in the eyes of the jury. The court will not foreclose the witnesses testimony simply

because there is a possibility of duplication at certain points.

**III.   Conclusion**

For the aforementioned reasons, the court **DENIES** Docket No. 300, **GRANTS IN PART** and **DENIES IN PART** Docket No. 301, **DENIES** Docket No. 302, and **DENIES** Docket No. 303.

**SO ORDERED**.

In San Juan, Puerto Rico this 25th day of January, 2012.

> *S/ Gustavo A. Gelpí*
> GUSTAVO A. GELPÍ
> United States District Judge